**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Hayley Smith, a minor, by and through Rhonda Smith, her parent and natural guardian; Steve Smith and Rhonda Smith, Plaintiffs, vs. Seligman Unified School District #40 of Yavapai County, Arizona; Todd Kissick, Defendants. | No. CV 09-8025-PCT-JAT **ORDER** |

Pending before this Court is Defendants Seligman Unified School District # 40 and Todd Kissick's Motion to Dismiss First Amended Complaint (Doc. # 19). For the reasons that follow, the Court grants Defendants' motion.

**BACKGROUND**

On April 1, 2008, Hayley Smith–a 13-year-old Freshman at Seligman High School ("SHS")–was questioned by Kissick, the Superintendent and Principal of SHS, and Ricardo Vargas, Chief of Operations or Operations Manager of SHS, concerning allegations that Hayley has used alcohol on campus and during school hours. Hayley denied the allegations and Kissick sent Hayley back to class and no action was taken against her at the time.

Hayley alleges that on April 8, 2008, while at track practice, she was assaulted when another student blew marijuana smoke at her face. On April 9, 2008, a teacher at SHS overheard a student stating that Hayley and a fellow student had been engaging in marijuana use at practice. Hayley was then confronted by Kissick and Vargas concerning the incident.

Hayley denied any marijuana use, but was nevertheless given a ten-day off-campus suspension, which was completed on April 29, 2008.

Kissick then made a recommendation to the School District Board of Trustees ("Board") that Hayley be expelled from SHS. On April 29, a hearing was held before the Board concerning the April 8 incident. Hayley appeared with her parents and she was also represented by counsel. At the hearing, the Board determined that there was not a need to expel Hayley. The next day, Hayley was then given a four-day suspension by Kissick for the April 1 incident.

## ANALYSIS

The Federal Rules of Civil Procedure embrace a notice-pleading standard. All that is required to survive a Rule 12(b)(6) motion is "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). In pleading the grounds of the claim, the plaintiff need not provide "detailed factual allegations," *Twombly*, 550 U.S. at 555; however, the plaintiff must plead enough facts "to raise a right to relief above the speculative level." *Id.* Factual allegations that are consistent with lawful conduct are insufficient to state a claim. *Id.* at 557. Such allegations are neutral and do not suggest "plausible liability" on the claim. *See id.* at 557 n.5 (recognizing a line "between the factually neutral and the factually suggestive," which "must be crossed to enter the realm of plausible liability")

Rule 8's pleading standard demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(citing *Twombly*, 550 U.S. at 555). A complaint that offers nothing more than naked assertions will not suffice. To survive a motion to dismiss, a complaint must contain sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Iqbal*, 129 S.Ct. At 1949. Facial plausibility exists if the pleader pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged. *Id.* Plausibility does not equal "probability," but plausibility requires more than a sheer possibility that a defendant has acted unlawfully. *Id.* "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citing *Twombly*, 550 U.S. at 557).

In deciding a motion to dismiss under Rule 12(b)(6), the Court must construe the facts alleged in the complaint in the light most favorable to Plaintiff and the Court must accept all well-pleaded factual allegations as true. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). Nonetheless, the Court does not have to accept as true legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

*Plaintiffs' Section 1983 Claims*

"To sustain an action under § 1983, a plaintiff must show (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a constitutional right." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In their motion to dismiss, Defendants do not argue that Kissick was not acting under color of state law. Rather, Defendants argue that Plaintiffs were not deprived of any constitutional rights. The Court agrees with Defendants.

Plaintiffs clarify in their response to Defendants' motion to dismiss precisely which of Defendants' actions they are seeking redress: "It should be clear that no claim is being made for the efforts to expel Hayley. A hearing was held on that charge and Hayley was exonerated. Rather, the alleged violations are related to the two off-campus suspensions; the first for ten days for the April 8 incident and the second for four days, related to the April 1 incident." (Doc. # 24 at p. 8.) Thus, Plaintiffs are seeking redress for alleged constitutional violations related to the April 1 and April 8 incidents.

RIGHT TO ATTEND PUBLIC SCHOOL

Plaintiffs allege that Defendants deprived them of the right of Hayley to be enrolled in public school, and the right of Hayley to attend public school while in session. Neither such right, however, is secured by the United States Constitution. *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35 (1973) ("Education, of course, is not among the rights

afforded explicit protection under our Federal Constitution. Nor do we find any basis for saying it is implicitly so protected."). Plaintiffs correctly contend that if a state voluntarily provides public education services, such a state cannot deprive persons the right to receive such public education without due process. However, such an argument falls under the rubric of a due process violation, not a violation of a right to education secured by the United States Constitution.

RIGHT TO PRIVACY

Plaintiffs next assert that Hayley's right to privacy was violated because Kissick involved Vargas–who is neither a certified educator nor a law enforcement officer–when Kissick was confronting Hayley about the April 1 and April 8 incidents. Plaintiffs' right to privacy claims appear to stem solely from Vargas' position in the school district, or perhaps more aptly put, lack of position. Vargas' official title as alleged by Plaintiffs is Chief of Operations or Operations Manager. As such, Vargas is neither a teacher nor law enforcement officer employed by the school district. The Court fails to see how this fact alone transforms Vargas' presence during the confrontations into a situation that violates Hayley's right to privacy, nor do Plaintiffs cite the Court to any cases so suggesting. Vargas is an employee of the school district. Moreover, he was present with Kissick, and not conducting the investigations on his own accord. As Plaintiffs' own allegations reveal, it was Kissick, and not Vargas, conducting the interrogations concerning the April 1 and April 8 incidents.

Nevertheless, Plaintiffs assert that Vargas is an untrained individual in violation of *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978). In *Monell*, the United States Supreme Court decided that a municipality can be found liable under § 1983, but only when the municipality itself causes the constitutional violation at issue. *Id.* at 694-95. Thus, Plaintiffs claim that their constitutionally protected right to privacy was violated because the school district failed to train Vargas in the proper manner of conducting investigations into allegations of student misconduct. To establish Defendants' liability under section 1983 for failure to train Vargas adequately, Plaintiffs must prove the failure to train in a relevant respect demonstrated a "deliberate indifference" to the Hayley's

constitutional rights. *City of Canton v. Harris,* 489 U.S. 378, 389 (1989). A failure to train "may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom" the inadequately trained person came into contact. *Id.* at 388. However, as discussed below in the discussion addressing Plaintiffs' due process claims, there was no deliberate indifference of Plaintiffs' constitutional rights during the confrontations. Vargas' mere presence, in and of itself, was not enough to cause a violation of Plaintiffs' constitutional rights; and even if the Court assumes that Vargas was not properly trained by the school district, none of Plaintiffs' due process rights were violated during the confrontations. Accordingly, Plaintiffs' claim for a violation of their right to privacy based upon the presence of Vargas fails.

## DUE PROCESS

Plaintiffs next claim that Defendants violated the "right of Hayley to not be deprived of her right to attend public school without due process of law." (Doc. # 15 at p. 10, ¶ 30.) Specifically, Plaintiffs allege that Hayley's two short-term suspensions stemming from the April 1 and April 8 incidents violated the Due Process Clause.

Our Supreme Court has expressly addressed what process is due before a student may be suspended for ten days or less:

> Students facing temporary suspension have interests qualifying for protection of the Due Process Clause, and due process requires, in connection with a suspension of 10 days or less, that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story.
>
> . . . .
>
> There need be no delay between the time "notice" is given and the time of the hearing. In the great majority of cases the disciplinarian may informally discuss the alleged misconduct with the student minutes after it has occurred. We hold only that, in being given an opportunity to explain his version of the facts at this discussion, the student first be told what he is accused of doing and what the basis of the accusation is.

*Goss v. Lopez*, 419 U.S. 565, 581-82 (1975).

The Court finds that based upon the facts alleged in Plaintiffs' complaint, Hayley was not denied the process that was due prior to her temporary suspensions. With respect to the

April 1 incident, Plaintiffs allege that Kissick and Vargas questioned Hayley in connection with allegations that Hayley had used alcohol while on campus and during school hours. According to Plaintiffs' complaint, "Kissick informed Hayley that it was alleged that Hayley had been using alcohol on school premises and that he, Kissick, 'knew all about it.' Hayley denied the allegations against her but was never confronted with the evidence against her." (Doc. # 15, p. 3 at ¶ 7.) With respect to the April 8 incident, Plaintiffs again allege that Hayley was confronted by Kissick and Vargas about Hayley's alleged marijuana use, which Hayley denied. Thus, by Plaintiffs' own admissions with respect to both the April 1 and April 8 incidents, Hayley was first told what she was accused of doing and what the basis of the accusations were. Then, Hayley was given an opportunity to respond. Such an informal hearing satisfies the requirement of the Due Process Clause as articulated by our Supreme Court in *Goss*.

Nevertheless, Plaintiffs argue that Hayley was never confronted with the evidence against her. Students, however, are not entitled to the type of evidence that is afforded at a formal hearing, or summary judgment type evidence, before being temporarily suspended. A school district disciplinarian need not disclose every piece of evidence he or she may have concerning the circumstances leading to the suspension. The disciplinarian need only state what the basis of the accusations are. *Id.* In the short-term suspension context, Hayley did not have the right to know the identity of her accusers, nor confront and cross-examine witnesses. *Id.*; *Coplin v. Conejo Valley Unified Sch. Dist.*, 903 F.Supp. 1377 (C.D.Cal.1995). Because Hayley was informed of what she was being accused of, the basis of the accusations, and she was given an opportunity to respond, Hayley's due process rights were not violated.

Plaintiffs also assert that their due process rights were violated because Hayley's parents were not timely notified of the charges as is required by the school district's policies. Even if Kissick deviated from applicable school district policies during the investigations, such deviations do not amount to violations of the Due Process Clause. *See Jacobs v. Clark County Sch. Dist.*, 526 F.3d 419, 441 (9th Cir. 2008) ("Plaintiffs provide no authority for their suggestion that a federal due process claim lies whenever a *local* entity deviates from

its *own* procedures in enacting a *local* regulation."). Further, *Goss* does not require pre-suspension parental notification, nor that school administrators follow every command outlined in a school district's policies. *See Martin v. Shawano-Gresham Sch. Dist.*, 295 F.3d 701, 707 (7th Cir. 2002) ("The Constitution does not require pre-suspension parental notification or a pre-suspension hearing."). Such claims do not amount to due process violations.

Likewise, there was no violation of Plaintiffs' due process rights because "an additional faculty member was not present during the hearing." (Doc. # 15 at p. 4, ¶ 10.c.) *Goss* requires only that the student be told what he or she is accused of doing, and be given an opportunity to explain his or her version of the facts and what the basis of the accusation is. *Goss*, 419 U.S. at 581-82. The Due Process Clause does not mandate a requisite number of teachers that must be present at the pre-suspension hearing.

Plaintiffs' last claim for a violation of the Due Process Clause revolves around Plaintiffs' allegation that Kissick had a conflict of interest in investigating Hayley's conduct because Rhonda Smith had previously filed an EEOC complaint against Kissick. Such an alleged bias, however, does not amount to a deprivation of due process. *See Brewer v. Austin Indep. Sch. Dist.*, 779 F.2d 260, 264 (5th Cir. 1985) ("A school administrator involved in the initiation and investigation of charges is not thereby disqualified from conducting a hearing on the charges, although the facts of an occasional case may demonstrate that a school official's involvement in an incident created a bias 'such as to preclude affording the student an impartial hearing.' ") (quoting *Sullivan v. Houston Indep. Sch. Dist.,* 475 F.2d 1071, 1077 (5th Cir. 1973)); *C.B. v. Driscoll,* 82 F.3d 383, 387 n. 3 (11th Cir. 1996) ("In the school context, it is both impossible and undesirable for administrators involved in incidents of misbehavior always to be precluded from acting as decisionmakers."). Plaintiffs' claim that Kissick is unconstitutionally biased because he suspended Hayley is without merit. No personal involvement or animus by Kissick is implicated in this case. As part of his job in maintaining discipline within SHS, Kissick investigated possible disciplinary violations. The short-term suspensions were not in any way related to the EEOC action Rhonda took against

Kissick. The suspensions were clearly based on SHS policies of precluding the use of prohibited substances on school campus. *See Riggan v. Midland Indep. Sch. Dist.*, 86 F.Supp.2d 647, 656 (W.D. Tex. 2000) ("In a school disciplinary context, the level of impartiality required for the decision maker does not reach the absolute neutrality required in the criminal justice system. Impartiality is presumed in the school context and due process is not implicated simply because the disciplinarian observed the conduct, had some knowledge regarding it, or even investigated prior to the hearing.") (citations omitted).

Moreover, even if the Court assumed that Plaintiffs' due process rights were violated, Plaintiffs' due process claims are effectively barred. Plaintiffs due process claims against Kissick are precluded by the doctrine of qualified immunity. "Government officials are given qualified immunity from civil liability under § 1983 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Jensen v. City of Oxnard,* 145 F.3d 1078, 1085 (9th Cir. 1998) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). Plaintiffs allege that Kissick violated the Due Process Clause by not disclosing all of the evidence to Hayley that Kissick possessed concerning the April 1 and April 8 incidents. However, based upon the allegations in the complaint, Kissick discussed the who, what, when, and where of the April 1 and April 8 incidents with Hayley, at which point Hayley was given the opportunity to respond. To require a full disclosure of all of the evidence a school administrator may possess would amount to an additional due process requirement above and beyond the requirements contained in *Goss* or any case cited by Plaintiffs. Accordingly, Kissick would be entitled to qualified immunity, as such a requirement was not "clearly established" at the time of the events in question. *Jensen*, 145 F.3d at 1085.

With respect to Plaintiffs' due process claims against the school district, such claims are barred by the Supreme Court's pronouncement in *Monell*. A school district is only liable for alleged constitutional violations under *Monell* if the violations were committed according to an official policy or a long-standing custom. *Monell*, 436 U.S. at 690-91. As discussed earlier, Plaintiffs allege that Kissick's conduct actually violated the school district's official

policies and procedures. Hence, there is no *Monell* violation based upon an official policy. With respect to a long-standing custom, Plaintiffs have failed to adequately allege how Kissick's actions are so persistent and widespread that they constitute a well settled district policy. In fact, the premise of Plaintiffs action is that Kissick singled Hayley out from her peers and treated her in a disparate manner. "[A] municipality cannot be held liable *solely* because it employs a tortfeasor–or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691. Accordingly, even if this Court concluded that Plaintiffs' due process rights were violated, Plaintiffs claim against the school district is barred under the principles contained in *Monell*.

EQUAL PROTECTION

Plaintiffs lastly assert that Hayley's right to equal protection has been violated. Plaintiffs premise their claim for equal protection upon allegations that other students who were charged with marijuana and alcohol violations were issued a simple warning and not suspended. Thus, Plaintiffs claim that Hayley was treated disparately as compared to other students at SHS under the same or similar circumstances.

Plaintiffs do not allege that Hayley was discriminated against on the basis that she is a member of a protected class. Rather, Plaintiffs argue that they have asserted a "class of one" equal protection claim. "Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). However, our Supreme Court has recent limited the "class of one" equal protection doctrine.

In *Engquist v. Oregon Department of Agriculture*, 128 S.Ct. 2146 (2008), the Supreme Court held that the class of one theory of equal protection does not apply in the public employment context. *Id.* at 2151. The Court finds that the basic principles that underlie the Supreme Court's decision in *Engquist* apply likewise to this case.

In *Engquist*, the Court stated that certain forms of state action which are highly discretionary and based upon individualized assessments are not subject to the class of one theory of equal protection challenges.

> There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

*Id.* at 2154. The Court believes that the type of decisionmaking that Plaintiffs complain of are precisely those type of actions not subject to the class of one theory of equal protection. Like any system of punishment, there will be a wide variety results, all of which depend upon the individual circumstances of each situation. To say that a principal must uniformly apply the same level of punishment to all violators of a particular policy is to rob him or her of the important discretion that is inherent in the position of principal. Moreover, a particular form of punishment may not be as effective for one student as it might for another. To subject a school district to equal protection claims each time a new or different punishment is administered by its principals would have the effect of handicapping school officials in meting out the type of punishment that the individual student is most likely to respond. Such an end is not the gravamen the Equal Protection Clause is intended to eliminate.

Moreover, this Court is guided by the same "common-sense realization" that guided the Supreme Court in *Engquist*; namely, that school districts could hardly function if every disciplinary decision became a constitutional matter. *See id.* at 2156. If a student need not claim discrimination on the basis of membership in a protected class, but rather only that he or she was treated worse than other students similarly situated, any disciplinary action taken by a school district can suddenly become the basis for a federal constitutional claim. It is not difficult to imagine an allegation of differential treatment in nearly every disciplinary decision in the public school context.

Thus, the class of one theory of equal protection, "which presupposes that like individuals should be treated alike, and that to treat them differently is to classify them in a way that must survive at least rationality review," *Id.* at 2155, is a hapless fit in the public school disciplinary context. To punish students differently is not to classify them in a way that raises equal protection concerns. Rather, it is simply exercising the broad discretion that is characteristic of the school administrator-student relationship. "A challenge that one has been treated individually in this context, instead of like everyone else, is a challenge to the underlying nature of the government action." *Id.* This is not to say that the Equal Protection Clause does not apply to public school disciplinarians. The Equal Protection Clause is undoubtedly implicated when school officials make class-based decisions in the punishment context, treating distinct groups of individuals categorically differently. However, any such class-based decisions are absent from Plaintiffs' allegations. As such, the Court finds that the class of one theory of equal protection is foreclosed by the Supreme Court's decision in *Engquist*. Because Plaintiffs' claim under the Equal Protection Clause is not premised upon being a member of a suspect class, the Court finds that Plaintiffs' claim for equal protection in this context fails.

*School Records*

Plaintiffs assert that they are entitled to have Hayley's school record expunged of the April 1 and April 8 incidents, as well as the short-term suspensions that resulted from these incidents. Plaintiffs argue that "if this court finds that a cause of action is stated and the plaintiffs can prove their allegations, 42 U.S.C. § 1983 expressly grants a court equitable powers to grant redress for a violation of one's civil rights." (Doc. # 24 at p. 13.) Because the Court concludes that Defendants did not violate any of Plaintiffs' constitutional rights, the court denies Plaintiffs' request.

Accordingly,

**IT IS ORDERED** that Defendants Seligman Unified School District # 40 and Todd Kissick's Motion to Dismiss First Amended Complaint (Doc. # 19) is granted.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly and close this case.

DATED this 8th day of October, 2009.

James A. Teilborg
United States District Judge